**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**UNITED STATES OF AMERICA,**

      - against -

**JOSE RIVERA,**
              **Defendant.**

─────────────────────────────────────

**24-cr-222 (JGK)**

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

    Upon responding to a 911 call regarding an altercation involving an armed individual, two New York City Police Department ("NYPD") officers encountered the defendant, Jose Rivera, who matched the alleged perpetrator's description. The defendant admitted to being aware of the incident and when the police asked him to come closer, he ran. He was subsequently hit by a vehicle and fell to the street. While in the street officers placed him in handcuffs and in doing so, found a gun in the defendant's waistband. The defendant seeks to suppress the firearm on the grounds that it was obtained in violation of the Fourth Amendment. For the following reasons, the motion to suppress is **denied**.

                                        **I.**

    After considering all of the evidence submitted in connection with the motion to dismiss, including the defense counsel's supporting affidavit, see Levine Aff., ECF No. 22, and the body-worn camera footage of two NYPD officers, the Court

makes the following findings of fact and reaches the following conclusions of law.

On November 9, 2023, an individual placed a 911 call, reporting that a man was threatening the caller's sister with a gun. Levine Aff. ¶ 6. The caller described the man as an approximately 48-year-old, Hispanic male and identified him as Jose Rivera, the father of the caller's sister's child. Id. Two NYPD officers received the resulting radio dispatch containing the description of the perpetrator and reported to the address, a large residential building, less than four minutes later. Id. ¶¶ 7-8, Ex. C.

Shortly after the officers arrived at the building, they observed two individuals exit. Id. ¶ 9. One of the officers asked the man in front—now known to be Rivera—"what's going on fellas?" and Rivera raised his hands and told the officers that someone in apartment unit 6J had been fighting.[1] Id. Rivera then pointed to the man behind him and said "look, ask the fella right there, ask him," and began walking away. Id. The officer then asked Rivera to "come over here," and Rivera ran. Id.

The officers gave chase and when Rivera crossed the street, Rivera was hit by a police car that had joined the pursuit. Id.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

2

¶ 10. While Rivera was lying in the street, the officers secured Rivera's hands behind his back and, in the process, discovered a firearm. The officers then recovered the firearm from Rivera's waistband. Id. After the officers had secured the firearm, they handcuffed the defendant. Id.

The parties contest only two facts. First, the arresting officer claimed that he stopped the defendant in part because the officer saw a dark mark on the defendant's face that might have been a bruise. Government's Opp. at 7, ECF No. 24. Second, the officer claimed that while pursuing the defendant, he saw a bulge in the defendant's waistband. Id. The defendant contends that neither the bruise nor the bulge is visible on the body-worn camera footage and the Government agrees. The Government asks the Court not to rely on either of the contested facts in its opposition to the motion to suppress. Id. Neither the Government nor the defendant points to any other disputed issues of fact and both the Government and the defendant contend that this motion can be decided based on the uncontested facts, without an evidentiary hearing. See Def.'s Mem. of L. at 6, ECF No. 23; Government's Opp. at 7; Reply Mem. of L. at 5, ECF No. 25. The Court heard oral argument on the motion.

## II.

Law enforcement officers may conduct an investigatory stop provided they have a "reasonable, articulable suspicion that the

3

person has been, is, or is about to be engaged in criminal activity." United States v. Place, 462 U.S. 696, 702 (1983). "During a lawful stop, if the investigating officer has reason to believe that the detained individual is armed and dangerous, he may conduct a patdown search for concealed weapons." United States v. Padilla, 548 F.3d 179, 187 (2d Cir. 2008). The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence," but the officer must have, "more than an 'inchoate and unparticularized suspicion or hunch'" of criminal activity. United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).

In evaluating whether an officer had reasonable suspicion of criminal activity, the court considers the totality of the circumstances. Id. at 8. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21. Facts that may not establish reasonable suspicion when viewed in isolation, may contribute to the formation of reasonable suspicion when viewed collectively. Id. at 22 (recognizing that a "series of acts, each of them perhaps innocent in itself," can when "taken together warrant[] further investigation"). Moreover, the Supreme Court has concluded that "nervous, evasive behavior is a pertinent factor

4

in determining reasonable suspicion" and "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

In Rivera's opening brief, he contends that the officer's request for him to "come over here" was unlawful pursuant to Terry, because the officer lacked reasonable suspicion for the "stop." Def.'s Mem. of L. at 2. However, in that brief, Rivera also concedes that "when the police told [him] to 'come over here,' he was free to leave." Id. at 5.

Under all the circumstances, the mere fact that an officer said to the defendant "come over here" is insufficient to create a Terry stop triggering the requirement of even reasonable suspicion. The two police officers were a distance from the defendant, there was no show of force, and—as the defendant concedes—he was free to leave and indeed, did leave. See California v. Hodari D., 499 U.S. 621, 627-28 (1991) ("A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."); see also United States v. Hooper, 935 F.2d 484, 491 (2d Cir. 1991) (outlining factors relevant to the determination of whether a defendant has been seized and concluding that the

5

defendant was not seized for Fourth Amendment purposes during an initial encounter with law enforcement in an airport); United States v. Lee, 916 F.2d 814, 819 (2d Cir. 1990) (same).

Moreover, Rivera does not reiterate his contention that the initial interaction was unlawful in his Reply Memorandum. Indeed, the defendant concedes in his reply brief: "The parties agree that Mr. Rivera was seized after he was hit by the police car and the officers pinned him to the ground." Reply Mem. at 2. At oral argument on the current motion, the defense made it clear that there was no argument that the initial encounter with the police outside the apartment building was a Terry stop.[2]

The defendant instead argues that the officers lacked reasonable suspicion of criminal activity when they restrained him in the street, frisked him, and uncovered the firearm—at which point, both parties agree that the defendant had been seized for Fourth Amendment purposes. However, the totality of the circumstances provided the officers with more than reasonable suspicion that Rivera had engaged in criminal activity. The officers were responding to a 911 call reporting an altercation involving a gun. The officers responded to the

---

[2] Terry and its progeny make clear that a Terry stop must actually involve a restraint on the person seized. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16.

6

report within a few minutes of the time that the report was made. The officers then encountered a man outside the apartment building who matched the description of the alleged perpetrator and who indicated he had knowledge of the altercation. When the officers attempted to question the defendant about the altercation, he ran.

Accordingly, the officers had reasonable suspicion that the defendant was engaged in criminal activity and behaved reasonably in choosing to pursue the defendant. And after the officers seized the defendant in the road, they were justified in frisking him because the 911 report of an armed individual gave rise to reasonable suspicion that the defendant was "armed and dangerous." See, e.g., United States v. Simmons, 560 F.3d 98, 108 (2d Cir. 2009) (concluding that the officer had reasonable suspicion that the defendant was armed and dangerous, based in part, on a 911 report regarding an assault that possibly involved a weapon); United States v. Sable, No. 22-cr-409, 2023 WL 5803414, at *5 (S.D.N.Y. Sept. 7, 2023) (finding that the officer had reasonable suspicion that the defendant was armed and dangerous in part because the suspect—whose description the defendant matched—was wanted for a non-fatal shooting).

The defendant attempts to segregate each fact and to argue that in isolation none of the facts could justify reasonable

7

suspicion. However, the defendant was not seized solely because he matched the general description of the perpetrator, or because he was stopped shortly after the altercation was reported outside the apartment building where it allegedly occurred, or because he was aware of the altercation in the apartment, or because he fled. Rather, the officers reasonably concluded that, in combination, these facts gave rise to the requisite reasonable suspicion. See, e.g., United States v. Muhammad, 463 F.3d 115, 123 (2d Cir. 2006) (finding that the defendant's flight in combination with an anonymous tip and other factors was sufficient to establish reasonable suspicion); United States v. Anderson, No. 24-cr-9, 2024 WL 2784332, at *5 (S.D.N.Y, May 28, 2024) (finding that flight in combination with the defendant's attempt to hide his bag was sufficient to establish reasonable suspicion); United States v. Torres, 252 F. Supp. 3d 229, 233-34 (S.D.N.Y. 2017) (finding that flight in combination with other factors was sufficient to establish reasonable suspicion).

Moreover, the subsequent frisk was justified by the reasonable suspicion that the defendant was armed and dangerous based on all the circumstances linking the defendant to the alleged assault with a weapon. See, e.g., Simmons, 560 F.3d at 108; Sable, 2023 WL 5803414, at *5. Accordingly, the firearm is

not the fruit of an unconstitutional search or seizure and should not be suppressed.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the reasons explained above, the defendant's motion to suppress is **denied**.

SO ORDERED.
Dated:    New York, New York
          October 31, 2024

　　　　　　　　　　　　　　　　　　／s／ John G. Koeltl
　　　　　　　　　　　　　　　　　　John G. Koeltl
　　　　　　　　　　　　　　　　United States District Judge